The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD AZPITARTE,

    Plaintiff,

v.

KING COUNTY, RON SIMS, SUSAN RAHR, DAVID REICHERT, DENOBI OLEGBA, ELIZABETH DERAITUS, LAMAR REED, THE ESTATE OF STEVE COX, SCOTT LAVIELLE, STEVE WRIGHT, JIM McMEINES, CEDAR RAPIDS TOWING LLC, JONY McCALL, GEORGE McCALL, MARK LEMOINE, JASON STANLEY, STEPHANIE WARDEN, MIKE HATCH, CW WILLIAMS CONSTRUCTION COMPANY, SYDNEY JACKSON and BILL TURNER,

    Defendants.

Case No. C07-1998-JCC

ORDER GRANTING MOTION TO DISMISS

This matter comes before the Court on Defendant King County's Motion to Dismiss (Dkt. No. 64), Plaintiff's Response (Dkt. No. 70), and Defendant King County's Reply (Dkt. No. 75). Having considered the parties' briefing and supporting documentation, the Court has determined that oral argument is unnecessary and hereby GRANTS the motion to dismiss.

ORDER GRANTING MOTION TO DISMISS
PAGE - 1

## I. BACKGROUND

This matter concerns actions taken on August 26–27, 2004, by King County officials to abate a public nuisance. (First Am. Compl. ¶ 34 (Dkt. No. 1 at 23); State Court Order Granting Inj. 2 (Dkt. No. 32-2 at 33).) Prior to these actions, Plaintiff Richard Azpitarte had accumulated junk, debris, and over eighty vehicles on his property and, allegedly, on the adjacent public rights-of-way. (State Court Order Granting Inj. 2 (Dkt. No. 32-2 at 33).) In 2002, King County issued a Notice and Order informing him that he was violating civil county codes and directing him to bring his property into compliance. (Notice and Order (Dkt. No. 32-2 at 1–3).) When Plaintiff failed to comply, the county sought an injunction in state court, which was granted on June 25, 2004 (State Court Order Granting Inj. 2–3 (Dkt. No. 32-2 at 33–34)), and upheld on appeal to the extent that it applied to violations on Plaintiff's own property, *see King County v. Azpitarte*, 130 Wash. App. 1047 (2005). The injunction directed Plaintiff to "cease using the property for accumulation and/or storage of vehicles, remove any vehicles currently stored on the property [other than six operative vehicles per legal lot], and remove all associated and/or other junk and debris" by August 24, 2004, and authorized King County "to enter the subject property and abate the code violations" if Plaintiff did not comply by that date. (State Court Order Granting Inj. 2–3 (Dkt. No. 32-2 at 33–34).) Plaintiff failed to comply with the injunction, and, on August 26 and August 27, King County entered the property and removed most of the vehicles. (*See* First Am. Compl. ¶ 34 (Dkt. No. 1 at 23).)

Plaintiff originally brought this action in King County Superior Court, but Defendants removed the case to federal court. (Notice of Removal (Dkt. No. 1 at 1–3).) The Complaint alleges that King County's enforcement of the code violations was made in retaliation for his having won a discrimination suit against the county in 1989. (First Am. Compl. ¶¶ 26, 28–34 (Dkt. No. 1 at 21–23).) Plaintiff also alleges that, for more than a decade, King County officials would repeatedly "hover" a county helicopter over Plaintiff's house to harass him, on anywhere from a weekly to a daily basis. (*Id.* ¶ 27 (claiming that "[w]henever [Plaintiff]

returns [to his home] for any significant period of time, defendant Jackson resumes the harassment with the helicopter").) Finally, Plaintiff claims that the King County officials and private contractors who executed the abatement order exceeded the scope of that order and removed the vehicles in a negligent fashion. (*Id.* ¶ 34–35.) Plaintiff argues that these alleged actions violated the federal and state constitutions, along with various state tort and discrimination laws. (*Id.* ¶ 43–71.)

Plaintiff's case has been exceedingly mismanaged from the start. The complaint names twenty-one defendants, but, sixteen months after filing, King County appears to be the only defendant to have been served.[1] (*See* Summons 2 (Dkt. No. 1 at 5).) The parties originally agreed to exchange initial disclosures by March 4, 2008, but Plaintiff's counsel failed to submit the disclosures even after being repeatedly reminded that he had missed the deadline. (Order Granting Mot. to Compel and for Sanctions 2 (Dkt. No. 47).) On June 25, 2008, Defendant served Plaintiff with interrogatories and requests for production of documents, but Plaintiff failed to respond within thirty days as required by Federal Rule of Civil Procedure 33(b)(1)(2). (*Id.*) On August 25, 2008, Defendants' attorney, Mark Stockdale, sent Plaintiff's attorney, John Scannell, an e-mail explaining that the responses to interrogatories and requests for production were over one month late and the initial disclosures were over five months late; in response, Mr. Scannell indicated that Plaintiff would provide all of the required discovery by September 5, 2008. (*Id.*) However, Plaintiff again failed to meet this deadline, apparently because certain of the responsive documents had been stolen from his home the week before; he would not indicate when he would provide the required information. (*Id.* at 2–3.)

---

[1] The King County Prosecuting Attorney's Office has appeared on behalf of Defendants King County, Ron Sims, Susan Rahr, David Reichart, Denobi Olegba, Elizabeth Deraitus, Bill Turner, Lamar Reed, the Estate of Steve Cox, Steve Wright, Jim Memeines, Mark Lemoine, Jason Stanley, Stephanie Warden, Mike Hatch, and Sydney Jackson, but not on behalf of the non-governmental Defendants Cedar Rapids Towing LLC, Jony McCall, George McCall, and CW Williams Construction Company. (Notice of Association (Dkt. No. 5).)

On September 24, 2008, Defendants moved to compel discovery and for sanctions in light of Plaintiff's complete failure to provide disclosures and discovery. (Dkt. No. 27.) The Court granted the motion, noting that Plaintiff had failed to provide any reasonable excuse for the six-month delay in providing initial disclosures or the three-month delay in responding to Defendants' interrogatories and requests for documents. (Order Granting Mot. to Compel and for Sanctions 4–5 (Dkt. No. 47).) The Court found that Defendants had been prejudiced by the extremely tardy initial disclosures, and, as a sanction, precluded Plaintiff from using any non-party witnesses in further proceedings. (*Id.* at 5–6.) Finally, the Court granted Defendants' request for the attorneys' fees incurred in filing the motion to compel. (*Id.* at 6.)

Even after being sanctioned, Plaintiff and his attorney have continued to prosecute this case in a disjointed and haphazard manner; in particular, Plaintiff has failed to comply with nearly *every* deadline required by the local rules and the Court's orders. On October 2, 2008, Defendants moved for summary judgment, and Plaintiff's response was submitted one day late. (*See* Resp. to Summ. J. Mot. (Dkt. No. 44 at 9).) On October 27, 2008, Plaintiff moved to amend the complaint to add a defendant and additional facts (Dkt. No. 51), even though the Court had specifically ordered that all pleading amendments be filed by September 5, 2008 (Dkt. No. 16); Plaintiff's reply, which was itself filed nine days late, provided no justification for filing the motion to amend more than seven weeks after the Court's deadline. (*See* Rep. to Second Mot. to Amend Compl. 1–2 (Dkt. No. 57).) The Court ordered that that the parties complete mediation by August 29, 2008; Defendants initially attempted to schedule the mediation in July 2008, but Plaintiff has repeatedly refused to participate. (*See* Stockdale Decl. 2 (Dkt. No. 66).) Finally, under the local rules and the Court's orders, the parties were required to exchange pretrial statements by January 28, 2009, but Plaintiff did not provide Defendants with the required statement until February 12, 2009. (Stockdale Decl. 2 (Dkt. No. 76).)

The reason for these delays is unclear, but they appear to stem in large part from incompetence on the part of Plaintiff and his attorney, in particular regarding their ability to

communicate with one another. Plaintiff tried to justify the initial six-month discovery delays in part because he "lost [his] cell phone, which could not be located in [his] house because it was set to vibrate." (Azpitarte Decl. 2 (Dkt. No. 35).) Similarly, his attorney explained that his own "cell phone got shut off." (Scanell Decl. 2 (Dkt. No. 36) ("Mr. Azpitarte always tries to reach me by cell phone but he did not have the new cell phone number.").) Plaintiff's attorney scheduled two depositions for December 10, 2008, but had to cancel them the day before because he was unable to locate his client. (Stockdale Decl. 2 (Dkt. No. 63).) Plaintiff's attorney also explained that he could not respond to Defendants' attempts to engage in mediation because the Plaintiff could not be located. (1/16/09 Email from John Scannell to Mark Stockdale (Dkt No. 66-4 at 2) ("I have been unable [to respond to your earlier e-mails] because I cannot locate my client. He has never given me a mailing address except the address where he cannot live, so I have had to rely on his cell phone. We have been phoning him every day but to no avail.").) At the same time, Plaintiff has called the Court's chambers several times over the past four months to complain that his attorney would not return his calls and refused to withdraw from the case; each time he called, the Court informed Plaintiff that any complaints about his attorney should be made in writing and mailed to the Court, but no written complaints have been received.

On February 5, 2009, Defendants moved to dismiss the action based on Plaintiff's failure to diligently prosecute his case and to comply with the Court's orders and rules. (Mot. 1–2 (Dkt. No. 64).) Defendants also moved to continue the upcoming trial date to allow briefing and consideration of the motion to dismiss. (Mot. to Continue 2 (Dkt. No. 61).) The Court granted the motion and continued the trial date from March 9, 2009, until May 4, 2009. (Order Granting Continuance (Dkt. No. 77).)

## II. DISCUSSION

The Federal Rules of Civil Procedure authorize a court, upon motion by a defendant, to dismiss an action with prejudice if the plaintiff fails to prosecute the case, fails to comply with

a court order, or fails to comply with the Federal Rules of Civil Procedure. FED. R. CIV. P. 41(b). The power to dismiss an action for failure to prosecute "is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962) (affirming dismissal for failure to prosecute based on attorney's unexcused failure to attend pretrial conference and other delays). Although dismissal is a harsh penalty reserved for extreme circumstances, it is appropriate when plaintiff fails to prosecute with "reasonable diligence" and does not require an explicit showing of actual prejudice to the defendant. *See Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976) (noting that there is a rebuttable presumption of injury from unreasonable delay).

In this case, Plaintiff and his attorney have repeatedly violated this Court's orders (the mediation deadline of August 29, 2008; the pleading amendment deadline of September 5, 2008), the Federal Rules of Civil Procedure (Rule 26(a)'s deadline for initial disclosures; Rule 33(b)(2)'s deadline for responding to interrogatories), and the local rules (Local Rule CR 7(d)'s briefing schedules; Local Rule CR 16(h)'s deadline for filing a Pretrial Statement), and they have generally failed to prosecute Plaintiff's case with "reasonable diligence." To determine whether dismissal is appropriate, the Court considers five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; (5) the availability of less drastic sanctions." *Malone v. USPS*, 833 F.2d 128, 130 (9th Cir. 1987). In this case, all five factors support dismissal with prejudice for Plaintiff's failure to prosecute and to comply with the Court's orders and rules.

### A. The Public's Interest in Expeditious Resolution of Litigation

"The public's interest in expeditious resolution of litigation always favors dismissal." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (*quoting Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Moreover, the public's interest is especially pronounced in

cases with governmental defendants. In this case, Plaintiff's unreasonable delays have wasted taxpayer money on two fronts, squandering the resources of both the federal judiciary and the King County Prosecuting Attorney's Office.

### B. The Court's Need to Manage its Docket

Plaintiff's failure to prosecute has already forced the Court to needlessly devote time and resources to two additional motions—the instant motion to dismiss and the previous motion to compel and for sanctions. *See Pagtalunan*, 291 F.3d at 642 ("Arguably, Pagtalunan's petition has consumed some of the court's time that could have been devoted to other cases on the docket."); *Yourish*, 191 F.3d at 990 (finding that Plaintiffs' failure to file an amended complaint by the court's deadline "require[ed] the district court to devote further time and resources to this matter rather than to the merits of an amended complaint"). Moreover, in order to adequately brief and consider the motion to dismiss, the Court was required to grant a two-month continuance of the trial date and all pre-trial deadlines. Finally, although Plaintiff's counsel has indicated that he could be prepared to try the case based on the current trial date (Scannell Decl. (Dkt. No. 71)), Plaintiff has suggested over the phone that he might still move for substitution of counsel, which would likely require a further continuance if granted. Given the impact of Plaintiff's delay on the Court's docket, this factor strongly supports dismissal.

### C. The Risk of Prejudice to the Defendant

"In determining whether a defendant has been prejudiced, we examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone*, 833 F.2d at 131. In this case, Defendants' prejudice is evident. Defendants have made a diligent effort to litigate this case, but Plaintiff's untimely initial disclosures, responses to interrogatories, and pretrial statement have impaired Defendants in meaningfully defending themselves against Plaintiff's accusations. Defendants have had to devote substantial resources to these disputes, ultimately resolving them only with the Court's assistance. Defendants prepared for depositions that Plaintiff had requested, only to

ORDER GRANTING MOTION TO DISMISS
PAGE - 7

have the depositions cancelled the night before when Plaintiff's attorney could not locate his client. (Stockdale Decl. 2 (Dkt. No. 63).) Finally, "unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale," *Pagtalunan*, 291 F.3d at 643, so Plaintiff's actions threaten to interfere with the rightful decision of this case.

Moreover, "[w]hether prejudice is sufficient to support an order of dismissal is in part judged with reference to the strength of plaintiff's excuse for the default." *Malone*, 833 F.2d at 131. Here, Plaintiff has provided no reasonable justification for any of the myriad failures to prosecute. As the Court noted in its previous order, Plaintiff's excuses for the discovery violations all concerned the preceding month, and therefore did little to explain the six-month delay in filing initial disclosures or the three-month delay in responding to Defendants' discovery requests. (Order Granting Mot. to Compel and for Sanctions 4 (Dkt. No. 47).) Plaintiff has provided no justification for filing his motion to amend the complaint seven weeks after the Court-ordered pleading amendment deadline.[2] As for the failure to engage in mediation and to timely file a pretrial statement, Plaintiff now suggests that these delays were justified because Plaintiff's Second Motion to Amend Complaint was still pending. (*See* Scannell Decl. 1 (Dkt. No. 69).) This appears to be a conveniently revisionist justification, as Plaintiff's counsel originally told Defendants that he could not respond to the mediation request because he could not locate his client (1/16/09 Email from John Scannell to Mark

---

[2] Instead, Plaintiff claims only that the Court's Status Conference Minute Entry—which stated "Pleading amendment/3rd pty action due by 9/5/2008" (Dkt. No. 16)—was unclear. "Plaintiff contends that such an order put him on notice with respect to pleading amendments that would bring in third parties would [sic] be due by September 5, 2008, not all pleading amendments whatsoever." (Reply re: Second Motion to Amend Complaint 2 (Dkt. No. 57).) The Court finds this argument utterly unconvincing—the entry makes clear that pleading amendments and thirty-party actions are both independently subject to the deadline. Moreover, Plaintiff's argument is particularly puzzling given that the proposed amended complaint *would have* brought in an additional defendant, so he would have violated even his own implausible interpretation of the Court's order. (Proposed Second Amended Complaint ¶ 23 (Dkt. No. 51-2) (adding Gayle Suave as a defendant).)

Stockdale (Dkt No. 66-4 at 2)) and originally appeared surprised upon learning that a Pretrial Statement had been required under the local rules (Kim Decl. ¶ 5 (Dkt. No. 65 at 2)). Either way, a pending motion does not authorize a party to disobey an explicit Court order; if Plaintiff believed the pending motion to amend would impede fruitful mediation, he should have raised that concern with the Court. *See Malone*, 833 F.2d at 130 (dismissing a case based on a failure to comply with a court order and noting that plaintiff's counsel had never communicated with the court to clarify the order).

Finally, Plaintiff suggests that he should not be held accountable for these unexcused failures because there is no evidence that he was to blame, rather than his attorney. (Resp. 2 (Dkt. No. 70) (arguing that dismissal is inappropriate "when there is no sign of either client neglect of court processes or knowledge of the attorney's neglect").) The Supreme Court has flatly rejected this proposition:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Link*, 370 U.S. at 633–34; *see also Anderson*, 542 F.2d at 526 ("The plaintiff cannot avoid this dismissal by arguing that she is an innocent party who will be made to suffer for the errors of her attorney."). Moreover, in this case, there is evidence that Plaintiff's negligence was at least partly to blame for the failure to prosecute. (*See* 1/16/09 Email from John Scannell to Mark Stockdale (Dkt No. 66-4 at 2) (noting that Plaintiff had never provided his attorney with an up-to-date mailing address); Azpitarte Decl. 2 (Dkt. No. 35) (blaming the breakdown in communication between Plaintiff and his attorney in part on the Plaintiff's loss of his cell phone).) Finally, it is clear from Plaintiff's phone calls to chambers that he was aware of his attorney's many errors, yet he never took the extra step of mailing a written complaint, despite

ORDER GRANTING MOTION TO DISMISS
PAGE - 9

being repeatedly advised that this was the only way the Court could acknowledge a request to substitute counsel. Plaintiff took no action to rectify his attorney's known, unreasonable failures; accordingly, he must be held accountable for such failures.

### D. The Public Policy Favoring Disposition of Cases on their Merits

Although public policy generally favors disposition of cases on the merits, the Court may also consider the strength or weakness of the plaintiff's case when determining whether dismissal is appropriate. *Anderson*, 542 F.2d at 526. "[T]he court should not closely scrutinize the merits of an action when reviewing an order of dismissal," *id.*, but even a cursory review of the record in this case indicates that Plaintiff has little chance of success on the merits. First, Defendants' pending motion for summary judgment makes several strong arguments for dismissing the action in its entirety. (*See* Second Mot. for Summ. J. (Dkt. No. 30).) Second, as a sanction for the extraordinary delay in filing initial disclosures, the Court prohibited Plaintiff from using any nonparty witnesses "to supply evidence on a motion, at a hearing, or at a trial." (Order Granting Mot. to Compel and for Sanctions 5–6 (Dkt. No. 47).) Finally, Plaintiff appears to have conducted little to no discovery. Therefore, even if summary judgment were not granted in its entirety, Plaintiff would be limited at trial to proving his case through only his own testimony and the testimony of his opposing parties. Given the unlikelihood that Plaintiff will succeed on the merits, the public policy favoring disposition of cases on the merits is entitled to far less weight in the analysis.

### E. The Availability of Less Drastic Sanctions

In considering whether less drastic sanctions are available, the Court should consider the feasibility of lesser sanctions, whether such sanctions have already been imposed, and whether Plaintiff has previously been warned of the possibility of dismissal. *Malone*, 833 F.2d at 132. In this case, the Court has already reprimanded Plaintiff for failing to provide initial disclosures and discovery responses (*see* Order Granting Mot. to Compel and for Sanctions 5 (Dkt. No. 47) (calling Plaintiff's complete discovery failure "inexcusable")), granted attorneys'

fees and costs to Defendants (*see id.* at 6), and imposed sanctions limiting the witnesses that Plaintiff may use to prove his case at trial (*see id.* at 5–6). Despite these prior sanctions, Plaintiff's unjustified delays have continued unabated.

The Court finds that more drastic sanctions are now required and that no sanction short of dismissal is feasible to address the failure to prosecute. Although the Court could sanction Plaintiff's attorney again and force him to withdraw from the case, *see Malone*, 833 F.2d at 132 n.1, this would only further set back the trial schedule and thereby further prejudice Defendants.

Although the Court's prior order did not explicitly warn that the case might be dismissed, Plaintiff concedes that the order put him on notice that "dismissal . . . could result from failure to provide discovery." (Resp. 4 (Dkt. No. 70).) Plaintiff argues, however, that dismissal is inappropriate because his subsequent delays did not specifically involve *discovery*. (*Id.*) The Court finds this argument unpersuasive. Plaintiff and his attorney have exhibited a pattern of unprofessionalism and unreasonable delay throughout this entire litigation, from discovery, to motion briefing, to mediation, to the preparation of a pretrial statement. The early indications of this general pattern formed the basis of the Court's prior sanctions, and Plaintiff cannot avoid the consequences of his actions simply because the most recent delays have taken a different form. The Court finds no feasible, available lesser remedies, so this factor (like all of the others) favors dismissal with prejudice.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. No. 64) is GRANTED. Defendants' Motion for Summary Judgment (Dkt. No. 30) and Plaintiff's Motion to Amend Complaint (Dkt. No. 51) are DENIED AS MOOT.

//

//

//

1     SO ORDERED this 3rd day of March, 2009.

/s/ John C. Coughenour

John C. Coughenour
United States District Judge